SWANN, Judge.-
This is another case in which a Cuban citizen-refugee, Angel Gil Alonso, residing in the United States, sought to recover the cash surrender value of an insurance policy purchased by him in Cuba from a United States insurer, The United States Life Insurance Company. The question before us is determination of the applicable rate of exchange for conversion of the peso amount into United States dollars.
The policy provided that the insurer would pay, in Havana, Cuba, or in the City of New York, the sum of 5,000 pesos to the insured or his named beneficiary, under certain conditions. A subsequent endorsement reduced the amount to 3,360 Cuban dollars and contained the following:
* * * * *
“NATIONAL CURRENCY
“All amounts payable or receivable under this policy shall be paid in the national currency of the Republic of Cuba; moreover, wherever the words pesos and centavos or the respective symbols therefor appear in this Policy or in any Supplementary Contract added thereto, they shall be construed as referring to the national currency of the Republic of Cuba, the currency in which this Policy was issued.”
In 1961, the plaintiff’s attorneys wrote to the company at its home office in New York City, demanding the cash surrender value of the policy. The company responded with a denial of liability on the ground that Cuba had forcibly seized its assets and had assumed its liabilities. This action was then instituted.
After final hearing, the chancellor entered the final decree, requiring the company to pay the stipulated cash surrender value of the policy in American dollars, based on a finding that the market value in the United States at the time of demand was one dollar for one peso, and that in Cuba the official exchange rate was one dollar to one peso. The insurance company, on appeal, asserts that it was reversible error to require them to pay the plaintiff one American dollar for each Cuban peso owed under the insurance policy.
These types of cases were first treated extensively by this court in 196-3[1] in an opinion which included “an adequate statement of facts and a scholarly and extended treatment of applicable law,” but which was reversed on other grounds[2] (no breach of contract and no cause of action).
We were next faced with a similar fact pattern in 1965.[3] There, an American insurance policy required payment in Cuban pesos in Galveston, Texas. The court *579 therein held that the official rate of exchange set by Cuba was inapplicable and the market rate of exchange in the United States was determinative for payment of the dollar value of pesos under a similar insurance policy. That rate was found to have varied between 15- and 18 cents per peso, at the time pertinent to that case.
This case presents a slightly different question, in that the chancellor herein made a specific finding that the prevailing rate of exchange in the United States markét place was one dollar for one peso, and that in Cuba the “official” rate of exchange was one dollar per peso, at the time of demand.
We have reviewed the record carefully and have found insufficient competent evidence to support the finding of fact that the prevailing rate of exchange in the United States market place was one dollar for one peso. Alonso offered testimony by one witness, who was formerly a lawyer in Cuba but was engaged at that time in the insurance business in the United States, that it would cost one dollar in the United States to have a peso delivered to someone in Cuba. He offered no evidence as to the dollar cost of pesos bought for delivery in the United States. In this regard, the evidence submitted by the defendant consisted of the testimony of a foreign currency exchange dealer and it was uncontro-verted that purchases and sales of pesos in the United States during the relevant time period varied between approximately 15- and 25 cents per peso.
In Hughes Tool Co. v. United Artists Corp.,[4] the court, in dealing with a question involving foreign currency, held that the parties did not intend that the defendant should solve the plaintiff’s foreign exchange difficulties. In determining the applicable rate of exchange, the court held:

“The rule that a recovery can be ex- • pressed only in the money of the forum does not determine the rate of exchange at which damages computed in foreign money shall be translated into dollars. The burden is upon plaintiff to establish the applicable rates of exchange as much as it is to prove the other necessary elements of damage.
‡ h

* * [CJourts must determine realistically the relative values of currencies. It will not do to sacrifice justice to the easy way of resorting, as a substitute for a free market, to an official rate of exchange that has been established for other purposes and does not apply to transactions in controversy; * *

“In computing damages, market value has been held to be the price at which the commodity could be replaced. * * * ”

In de Cardenas, supra, the evidence showed that on the demand date the peso was actually bought and sold in the market place in the United States for 15- to 18 cents, depending on the size of the transaction. The testimony and evidence in the case, sub judice, is quite similar to that adduced in de Cardenas. We therefore follow the holding of de Cardenas and all subsequent decisions.[5]
Accordingly, we reverse and remand with directions to enter a judgment for the plaintiff, awarding the insured the market value in dollars of the pesos due him at the time of demand.
Reversed and remanded with directions.

. Confederation Life Association v. Ugalde, Fla.App.1963, 151 So.2d 315.

. Confederation Life Association v. Ugalde, Fla.1964, 164 So.2d 1.

.American National Insurance Company v. de Cardenas, Fla.App.1965, 181 So.2d 359.

. 279 App.Div. 417, 110 N.Y.S.2d 383 (1952); affirmed in 304 N.Y. 942, 110 N.E.2d 884 (1953).

. Pan-American Life Insurance Company v. Blanco, 362 F.2d 167 (5th Cir. 1966) ; Pan-American Life Insurance Company v. Alvarez, 374 F.24 92 (5th Cir. 1967).